UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| REBIRTH CHRISTIAN ACADEMY DAYCARE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| DEBRA MINOTT, in her official capacity as Secretary of the Indiana Family and Social Services Administration, *et al.* | ) ) ) ) | No. 1:12-cv-01067-SEB-DKL |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**
[Docket Nos. 26 and 36]

This cause is before the Court on Defendants' Motion to Dismiss, filed on May 22,

2013, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiff

Rebirth Christian Academy Daycare, Inc. ("Rebirth") brings this action against

Defendants Debra Minott in her official capacity as Secretary of the Indiana Family and

Social Services Administration; Melanie Brizzi, Child Care Administrator for the

Division of Family Resources of the Indiana Family and Social Services Administration,

in her official and individual capacities; and Michael Gargano in his individual capacity,[1]

---

[1] Plaintiff's First Amended Complaint names as defendants, in both their individual and official capacities, only Michael Gargano and Melanie Brizzi.  However, since the Amended Complaint was filed, Debra Minott has replaced Mr. Gargano as the Secretary of the Indiana Family and Social Services Administration.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Minott

pursuant to 42 U.S.C. § 1983, alleging that its procedural due process rights under the Fourteenth Amendment to the United States Constitution were violated when the Indiana Family and Social Services Administration terminated its status as an unlicensed child care ministry without affording it access to an administrative appeal process. For the reasons detailed below, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.[2]

## **Factual Background**

Rebirth is a non-profit organization incorporated under the laws of the State of Indiana. In September 2009, Rebirth began lawful operations as an unlicensed child care ministry. Generally, in order to legally provide child care in Indiana, child care homes and centers must obtain a license from the Indiana Family and Social Services Administration's ("FSSA") Division of Family Resources' ("DFR") Bureau of Child Care ("BCC").[3] However, pursuant to Indiana Code § 12-17.2-6-1, *et seq.*, individuals or organizations may operate child care ministries[4] without a license, provided that they register with the DFR and meet certain statutory and regulatory requirements imposed by the DFR and the Division of Fire and Building Safety. If an unlicensed child care

is substituted as the official-capacity defendant. Mr. Gargano remains named as a defendant in his individual capacity.

[2] On July 11, 2013, Plaintiff filed a Motion to Strike Portion of Defendants' Reply Brief, or in the alternative, Motion for Leave to File Surreply, alleging that Defendants for the first time raised new arguments in their reply brief. Plaintiff's Motion to Strike is hereby DENIED, but its Motion for Leave to File Surreply is GRANTED.

[3] The BCC is the subdivision of DFR responsible for overseeing the regulation of child care providers in Indiana.

[4] Under Indiana law, a "child care ministry" is "child care operated by a church or religious ministry that is a religious organization exempt from federal income taxation under Section 501 of the Internal Revenue Code." IND. CODE § 12-7-2-28.8.

ministry at any time fails to meet these requirements exempting it from licensure, it loses

its exemption.  *See* IND. CODE § 12-17.2-6-9.  In such cases, if the unlicensed child care

ministry desires to continue operating legally, it must apply for and receive a child care

center license from the BCC.  *See* IND. CODE § 12-17.2-4-1; § 12-17.2-6-3.

**Prior State Court Proceedings**[5]

In 2010, the FSSA revoked Rebirth's status as an unlicensed child care ministry

because it determined that Rebirth employed an individual with a prior felony conviction,

in violation of Indiana Code § 12-17.2-6-14.[6]  On July 9, 2010, Rebirth filed in Marion

Superior Court ("the State Court") an emergency petition for a temporary restraining

order and hearing based on the FSSA's revocation of its registration.  The State Court

denied Rebirth's request for a temporary restraining order and, on August 2, 2010, the

parties ultimately entered into an agreed judgment ("Agreed Judgment") providing that

Rebirth could continue to qualify for the exemption from child care licensure as long as

---

[5] These facts are drawn from a number of state court litigation documents submitted by
Defendants in support of their motion to dismiss.  Because the facts contained therein are readily
ascertainable from the public court record and are not subject to reasonable dispute, we take
judicial notice of them.  *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (citing
*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997);
*Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).  Although these documents
were not attached to Plaintiff's complaint, our taking judicial notice of matters of public record
"need not convert a motion to dismiss into a motion for summary judgment."  *Id.* at 773 (citing
*Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008)).

[6] Indiana Code § 12-17.2-6-14(a)(3) provides in relevant part as follows: A child care ministry
must "[r]efrain from employing, or allowing to serve as a volunteer, an individual who has direct
contact with a child who is receiving child care from the child care ministry and who: (A) has
been convicted of a felony: (i) related to the health or safety of a child; (ii) that is a sex offense
…; (iii) that is a dangerous felony; or (iv) that is not a felony otherwise described in items (i)
through (iii), and less than ten (10) years have elapsed from the date the person was discharged
from probation, imprisonment, or parole, whichever discharge date is the latest …."

the individual with a prior felony conviction employed by Rebirth had no contact with the children and did not work during operational hours.

On April 15, 2011, the FSSA initiated contempt proceedings against Rebirth in state court.  In response, on July 29, 2011, Rebirth filed a motion requesting that the State Court vacate and set aside the FSSA's termination of Rebirth's registration as an unlicensed child care ministry because, *inter alia*, the FSSA's termination was invalid insofar as Rebirth was entitled to certain procedural due process rights, including the right to notice and an adjudicative hearing, prior to termination.  The State Court never reached the merits of the contempt motions or Rebirth's motion.  Instead, the parties entered into a court-approved First Amended Agreed Judgment ("Amended Agreed Judgment") that resolved all of the issues then pending between them.

**Defendants' Termination of Plaintiff's Registration**

On February 8, 2012, Rebirth received its annual Certificate of Registration ("Certificate"), which authorized Rebirth to operate as an unlicensed child care ministry, effective February 7, 2012 through December 31, 2012.[7]  Also in February 2012, the individual employed by Rebirth who had been convicted of a felony obtained a court order restricting the records related to her felony conviction.  Based on that order, on April 5, 2012, Rebirth moved to dissolve the Amended Agreed Judgment to permit the employee to appear on Rebirth's premises during operational hours.

---

[7] On February 3, 2012, the corporate status of Rebirth was administratively dissolved by the Indiana Secretary of State as a result of an administrative error.  Its status was reinstated in October 2012, and under Indiana law that reinstatement is retroactive to the date of dissolution. *See* IND. CODE § 23-17-23-3(c).  Accordingly, the temporary dissolution has no effect on our analysis here.

However, before the State Court ruled on Rebirth's motion to dissolve, a representative of the BCC conducted an unannounced inspection of Rebirth in May 2012. According to the BCC, upon inspection, it determined that Rebirth was out of compliance with eight statutory and/or regulatory requirements.  At the conclusion of the inspection, Rebirth received a Plan of Improvement for Unlicensed Registered Child Care Ministries (State Form 50897) ("Plan of Improvement"), which listed the eight violations and identified steps Rebirth could take to cure the deficiencies.  These violations included, *inter alia*, the unavailability of a number of documents, such as shot records, parent notices, and criminal history checks; hot water temperatures exceeding 120 degrees; and improper coverage of refrigerated bottles.  Rebirth disputes all of these violations.  The Plan of Improvement provided instruction regarding the manner in which Rebirth could submit information demonstrating that it had cured the alleged deficiencies, but it did not provide a procedure for Rebirth to challenge the BCC's findings.

On June 8, 2012, the BCC sent Rebirth a letter stating as follows: "This is the official notification that the Certificate of Registration for your child care ministry, Rebirth Christian Academy … will be terminated effective June 22, 2012.  Exh. A to Am. Compl. ("Termination Letter").  Upon receipt of the Termination Letter, Rebirth (through its counsel) contacted the BCC in order to request an administrative appeal of its termination.  Melanie Brizzi, then the Child Care Administrator and head of the BCC, responded by letter on June 29, 2012, informing Rebirth that it "does not have an administrative appeal review process before the Division of Family Resources."  Exh. B

to Am. Compl.  Pursuant to the terms of the Termination Letter, Rebirth ceased operation as an unlicensed child care ministry on June 22, 2012.

**Subsequent State Court Proceedings**

On June 29, 2012, Rebirth filed a motion in State Court requesting that the State Court determine whether the FSSA's termination of its unlicensed child care ministry registration "falls within the subject matter of the [State Court] litigation."  On August 14, 2012, the State Court denied Rebirth's April 5, 2012 motion to dissolve.  The State Court did not address Rebirth's motion for declaratory judgment in its order denying the motion to dissolve.  On appeal, the Indiana Court of Appeals affirmed the State Court's refusal to modify the Amended Agreed Judgment.  *See Rebirth Christian Academy Daycare, Inc. v. Ind. Family & Soc. Servs. Admin.*, 990 N.E.2d 24 (Ind. Ct. App. 2013).  So far as we know, Rebirth's motion for declaratory judgment remains pending in the State Court.

**The Instant Lawsuit**

On July 11, 2012, prior to a final resolution of its then-pending claims, Rebirth filed a complaint in Marion Superior Court based on the FSSA's termination of its unlicensed child care ministry registration, which action was removed to our Court on July 31, 2012.  On April 3, 2013, Rebirth was granted leave to file a first amended complaint, alleging that Defendants' failure to provide an administrative review of their decision to terminate violated its procedural due process rights protected by the Fourteenth Amendment.  Defendants filed the instant motion to dismiss on May 22, 2013, which is now before us for decision.

## Legal Analysis

### I.      Standard of Review

Defendants have filed their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), but have not distinguished between these rules in framing their motion.  We see no grounds for dismissal under Rule 12(b)(1) and thus analyze Defendants' arguments solely under the Rule 12(b)(6) framework.[8]  Under Rule 12(b)(6), the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant.  *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).  Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level."  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted).  The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2).  Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### II.      Collateral Estoppel and *Res Judicata*

---

[8] In Defendants' opening brief, they argued that the temporary dissolution of Rebirth's corporate status precluded it from pursuing the instant action.  It appears that Defendants intended this argument to be brought pursuant to Rule 12(b)(1).  However, that argument was abandoned in subsequent briefing and we therefore need not address it further.

The FSSA contends that Rebirth's procedural due process claim is precluded by the doctrines of collateral estoppel and *res judicata*.  In determining whether Rebirth's claim is barred by these doctrines, we apply Indiana law.  *See Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007) (recognizing that federal courts "apply the preclusion law of the state that rendered the [earlier] judgment to determine whether" a subsequent suit is barred) (citations omitted).

### A.    *Res Judicata*

Under Indiana law, for a claim to be precluded under the doctrine of *res judicata*, the following four requirements must be met: "(1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies."  *Small v. Centocor, Inc.*, 731 N.E.2d 22, 26 (Ind. Ct. App. 2000) (citation omitted).  Rebirth does not dispute that the first and second prongs are met here.  Accordingly, the only requirements in dispute are prongs three and four, to wit, whether the procedural due process question could have been determined in the prior action and whether the parties in the former action are in privity with the parties here.

It is clear to us that the procedural due process issue presented here was not, indeed, it could not have been litigated in the State Court action, and thus, that the

doctrine of *res judicata* does not apply.[9]  Under well-established law, a judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."  *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955).  The case before us presents a very narrow question, to wit, whether the FSSA's June 2012 termination of Rebirth's unlicensed child care ministry registration which occurred without Rebirth having been provided an administrative appeal hearing violated Rebirth's procedural due process rights.  The State Court action, in contrast, involved issues surrounding the felony status of one of Rebirth's employees which arose two years prior to the events giving rise to the instant litigation.

The FSSA contends that Rebirth's July 29, 2011 motion to set aside the parties' original Agreed Judgment provided an opportunity for Rebirth to litigate the constitutional issues presented by this case.  It is true that Rebirth raised in that motion (among other arguments) a procedural due process argument in connection with the FSSA's termination of its status as an unlicensed child care ministry in February 2011, but the State Court never reached those constitutional issues presented in the motion to set aside.  Even if it had, the doctrine of *res judicata* would not bar Rebirth's present due process claim because it is based on events that had not yet occurred at the time the State Court action was commenced and the Agreed Judgment and Amended Agreed Judgment were entered.  Thus, the instant claim was not a part of that proceeding.  *See Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 857 (7th Cir. 2001) (holding that,

---

[9] Because the third prong is not met, we need not address the privity question.

for *res judicata* purposes, "a claim is not an argument or a ground but the events claimed to give rise to a right to a legal remedy.") (citations omitted).  The fact that Rebirth raised procedural due process arguments in connection with the FSSA's termination of its registration in 2011 does not bar it from bringing a new due process claim based on the FSSA's termination of its registration under different circumstances in 2012.  *See S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (holding that *res judicata* did not apply to bar similar claims initiated subsequent to a first judgment because "[t]he claim that First Jersey defrauded customers in the sale, purchase, and repurchase of certain securities in 1975-1979 is not the same as the claim that First Jersey defrauded customers in the sale, purchase, and repurchase of other securities in 1982-1985.").  The case before us, therefore, is not precluded by *res judicata*.

> **B.    Collateral Estoppel**

The FSSA also contends that the doctrine of collateral estoppel bars the present action.  This is a defensive tactic that "involves a situation where a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff had previously litigated and lost."  *In re Commitment of Heald*, 785 N.E.2d 605, 612 (Ind. Ct. App. 2003) (citations omitted).  Under Indiana law, the following three requirements must be satisfied for collateral estoppel to apply: "(1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action."  *National Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012) (citation omitted).  Additionally, in determining whether application of the collateral estoppel doctrine is appropriate, courts consider

10

whether the party against whom the former adjudication is asserted "had a full and fair opportunity to litigate the issue, and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Small*, 731 N.E.2d at 28 (Ind. Ct. App. 2000).

The FSSA claims that the issues presented here were previously decided by the State Court when it approved the parties' Agreed Judgment and Amended Agreed Judgment, and thus Rebirth is estopped from arguing again in this Court that it is entitled to procedural due process in the form of an administrative appeal. We disagree. The doctrine of collateral estoppel does not bar the current litigation because the issues being litigated in the instant action were not previously addressed and resolved by the State Court. Neither the Agreed Judgment nor the Amended Agreed Judgment approved by the State Court decided Rebirth's right to procedural due process. As Rebirth notes, the State Court merely approved a consent decree specifying the terms and conditions under which the individual with a felony conviction employed by Rebirth could continue to work for the organization. The consent decree contained no mention of Rebirth's procedural due process rights or any other constitutional issues. The FSSA apparently contends that, although such issues were not explicitly addressed in the consent decree, their resolution should be inferred from the terms of the parties' settlement. However, this is an insufficient basis on which to apply the collateral estoppel doctrine as "[c]ollateral estoppel does not extend to matters that were not expressly adjudicated and can be inferred only by argument." *Fox v. Nichter Constr. Co., Inc.*, 978 N.E.2d 1171, 1181 (Ind. Ct. App. 2012) (quoting *Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170,

11

1175 (Ind. Ct. App. 2006)).  Accordingly, Rebirth is not collaterally estopped from

bringing the procedural due process claim at issue in this litigation.

## II.    Procedural Due Process

Having resolved the *res judicata* and collateral estoppel issues, we now turn to

determine whether Rebirth has adequately pled a claim for relief.  To state a claim for a

procedural due process violation, a plaintiff must establish: (1) a protected property

interest; (2) a deprivation of that property interest by an individual acting under the color

of state law; and (3) a denial of due process.  *Booker-El v. Superintendent*, 668 F.3d 896,

900 (7th Cir. 2012) (citing *Tenny v. Blagojevich*, 659 F.3d 578, 581 (7th Cir. 2011)).

Here, the FSSA contends that Rebirth cannot state a claim for a due process violation

because it did not have a property interest in its registration as an unlicensed child care

ministry and, if it did, it was afforded sufficient process before having its registration

terminated.  We address these arguments in turn below.

### A.    Property Interest

The "threshold question" in any procedural due process challenge alleging a

deprivation of property "is whether a protected property interest actually exists."  *Cole v.*

*Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011).  "A protected

property right under the Fourteenth Amendment due process clause is something that 'is

securely and durably yours under state (or … federal) law, as distinct from what you hold

subject to so many conditions as to make your interest meager, transitory, or uncertain."

*Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 509 (7th Cir. 2013) (quoting *Reed v.*

*Village of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983)).  Property rights "are created

and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Property interests exist "only when the state's discretion is 'clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met.'"  *Booker-El*, 668 F.3d at 900 (quoting *Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 729 (7th Cir. 2006)).

Here, Rebirth claims a property right in its certificate of registration as an unlicensed child care ministry.  Pursuant to Indiana Code § 12-17.2-6-1, a child care ministry "*is* exempt from licensure" (emphasis added) as long as it complies with certain statutory requirements, including: registering with the division of family resources and the division of fire and building safety (IND. CODE § 12-17.2-6-2); complying with certain rules for fire prevention and permitting annual inspections (IND. CODE § 12-17.2-6-5); providing certain notices to the parents and guardians of the children it enrolls (IND. CODE § 12-17.2-6-7); including certain statements in any promotional and advertising materials (IND. CODE 12-17.2-6-10); paying certain registration fees (IND. CODE § 12-17.2-6-12; IND. CODE § 12-17.2-6-13); conducting criminal history checks of its employees and volunteers (IND. CODE § 12-17.2-6-14); and permitting unscheduled visits by custodial parents and guardians of the children it enrolls (IND. CODE § 12-17.2-6-15).

The FSSA concedes that if an entity meets all of these requirements, it is entitled to lawfully operate as an unlicensed child care ministry.  In other words, the statute confers no discretion on the part of the administrative agency to deny the exemption so

long as the statutory requirements are satisfied.  Accordingly, we find that Rebirth has a legitimate expectation to the benefit derived from the exemption, and thus has adequately alleged a claim to a property interest to which due process protections apply.[10]  We address next the question of whether Rebirth has adequately pled that the FSSA failed to provide it with adequate process.

### B.    Deprivation of Property Interest Without Due Process

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted).  This generally means that "at a minimum, due process requires '*some* kind of notice and … *some* kind of hearing.'"  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (quoting *Goss v. Lopez*, 419 U.S. 565, 579 (1975)) (emphasis in original).  Here, Rebirth alleges that it was not afforded an administrative hearing or other method by which to challenge the FSSA's findings before its registration was terminated.  Assuming these facts as true, as we are required to do at this stage of the litigation, Rebirth has adequately alleged that it was not afforded constitutionally adequate due process before its exemption was revoked.

The FSSA maintains that the plan of improvement given to Rebirth before its registration was terminated satisfied any constitutional requirement of due process to which Rebirth may be entitled because it allowed Rebirth an opportunity to respond

---

[10] The FSSA argues that Rebirth cannot establish that it was deprived of a property interest because it is still entitled to legally operate a child care ministry if it applies for and is granted a license to do so.  However, the FSSA cites no case law to support the conclusion that the fact that there is another avenue available to Rebirth to legally provide child care necessarily means that it was not deprived of a benefit when its exemption was revoked.

before its registration was terminated.  However, the plan of improvement appears to have allowed Rebirth only an opportunity to correct the deficiencies discovered during the FSSA's inspection.  It is not clear whether the plan of improvement also provided Rebirth an opportunity to challenge the accuracy or appropriateness of those allegations in any meaningful fashion.  Generally, procedural due process rules are in place to "minimize substantively unfair or mistaken deprivations of life, liberty, or property by enabling persons to contest the basis upon which a State proposes to deprive them of protected interests."  *Carey v. Piphus*, 435 U.S. 247, 259-60 (1978) (internal quotation marks and citation omitted).  Determining whether the plan of improvement did in fact provide constitutionally sufficient process will require further factual development that cannot be resolved at the motion to dismiss stage.

The FSSA also argues that, even if the court finds that Rebirth was entitled to some level of due process, the government's significant interest in the welfare of children "temper[s] the amount of formality the due process would require."  Defs.' Reply at 4. The FSSA argues that, because its interest in ensuring the safety of the children in the care of the child care ministry would be negatively impacted by any lengthy administrative review process, the availability to Rebirth of a post-deprivation judicial remedy to assess the propriety of the state's action is sufficient to satisfy the requirements of procedural due process.

It is true that, "the Supreme Court has found that certain situations of 'executive urgency' call for action that dispenses with normal due process guarantees…." *Krimstock v. Kelly*, 306 F.3d 40, 66 (2d Cir. 2002) (quoting *United States v. James*

15

*Daniel Good Real Prop.*, 510 U.S. 43, 60 (1993)).  In defining situations that justify such action, the Supreme Court "has provided the examples of summary seizures during wartime, seizures of contaminated food, and, formerly, the collection of taxes when the very existence of the government depended on them."  *Krimstock*, 306 F.3d at 66 (citing *James Daniel*, 510 U.S. at 59-60).  In such cases, "the state may legitimately act first and provide procedural protection subsequent to the taking of the property."  *Bonner v. Coughlin*, 545 F.2d 565, 577 (7th Cir. 1976).  However, we are not persuaded, at least on the limited factual record currently before us, that the circumstances at bar present a claim of sufficient urgency to justify dispensing with normal due process guarantees.[11]

Protecting the welfare of children is clearly an issue of utmost importance.  However, as Rebirth points out, the urgency of the situation in this particular case is belied by the delay of nearly three weeks between the FSSA's initial inspection of Rebirth during which the alleged deficiencies at issue in this litigation were discovered and the termination of Rebirth's registration as an unlicensed child care ministry.  Moreover, given the importance of the State's interest in protecting the health and safety of children, the statutory scheme governing licensed child care centers and child care homes requires the State to adopt rules establishing a list of violations "that would pose an immediate threat to the life or well-being of a child in the care of a licensee."  IND. CODE § 12-17.2-4-18.7; IND. CODE § 12-17.2-5-18.7.  The FSSA does not argue that the deficiencies discovered as a result of the agency's inspection of Rebirth fall within this

---

[11] In any event, in establishing procedural protections, nothing would foreclose the imposition of expedited, accelerated time tables in order to provide children with meaningful administrative oversight and protection.

list of immediate threats.  Given the very limited scope of the "executive urgency" doctrine, which requires a showing of an immediate threat to the public absent the taking of the property, the current factual record does not support its application in the case at bar.  Accordingly, Rebirth's procedural due process claim is not subject to dismissal on this basis.

### III.    Qualified Immunity

Finally, the FSSA argues that even if Rebirth's constitutional rights were violated, Defendants are entitled to qualified immunity in their individual capacities because those rights were not clearly established at the time of the violation.  We agree.  Under the doctrine of qualified immunity, public officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  Thus, "[d]efeating qualified immunity requires (1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a 'reasonable official would understand that what he is doing violates that right.'"  *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (quoting *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000)).

We are not persuaded that Michael Gargano's and Melanie Brizzi's failures either to set an administrative hearing on the loss of the exemption from state child care center licensure when the FSSA's procedures did not provide for such an administrative appeals process or to otherwise take unilateral action to change the FSSA's procedures constitutes

17

action "contrary to clearly established constitutional norms that a reasonable official would understand."  *Christopher v. Harbury*, 536 U.S. 403, 411 (2002) (internal quotation marks and citation omitted).  Rebirth has not pointed us to, and our research has not otherwise uncovered, a reasonably analogous case establishing that the failure by individual state officials to initiate administrative appeal procedures, especially in the absence of any established administrative procedures under state law for doing so, following the loss of the exemption from the licensure requirements at issue in this case was clearly outside the scope of the law such that a reasonable state employee would know the conduct was unlawful.  Accordingly, Mr. Gargano and Ms. Brizzi are entitled to qualified immunity with respect to the individual capacity claims brought against them.

## IV.    Conclusion

For the reasons detailed above, Plaintiff's Motion to File Surreply is <u>GRANTED</u>.  Defendants' Motion to Dismiss is <u>GRANTED</u> as to the individual capacity defendants and <u>DENIED</u> as to the claims against defendants in their official capacities.  The case will proceed accordingly.

IT IS SO ORDERED.

Date: _____   01/13/2014

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

18

Distribution:


Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Elizabeth Cameron Milliken
ELIZABETH C. MILLIKEN LAW OFFICE
libby@attorneymilliken.com

Corinne T.W. Gilchrist
OFFICE OF THE INDIANA ATTORNEY GENERAL
corinne.gilchrist@atg.in.gov